## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

MANUEL SOTO,

     Plaintiff,

v.                                    No. 20-cv-375-MV-KRS

METROPOLITAN DETENTION CENTER
LISA MORTON, FNU RICHARDSON,
RALPH HERNANDEZ,

     Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on the Amended Prisoner Civil Rights Complaint (Doc. 7) (the "Complaint") filed by Plaintiff Manuel Soto. Plaintiff is an inmate at the Penitentiary of New Mexico, and he proceeds *pro se* and *in forma pauperis*. He seeks relief for violations of his First and Fourteenth Amendment rights. Pursuant to the screening requirement of 28 U.S.C. § 1915A, the Court will dismiss the Complaint for failure to state a claim upon which relief can be granted.  The Court will, however, give Plaintiff an opportunity to file an amended Complaint.

    I.    <u>Background</u>

The following facts are taken the Complaint. (Doc. 7). The Court assumes, but does not decide, that they are true.

Plaintiff filed this Complaint when he was a pretrial detainee at the Metropolitan Detention Center ("MDC").  (Doc. 7 at 6). Defendant Ralph Hernandez was the chief of MDC. (Doc. 7 at 2). Defendant FNU Richardson was the incoming chief and the Deputy Chief.  (Doc. 7 at 2).

Defendant Lisa Morton[1] was MDC's Legal Librarian Paralegal. (Doc. 7 at 3, 6). Plaintiff is suing each named Defendant in their individual and official capacities. (Doc. 7 at 2-3). In their official capacities only, Plaintiff also names as Defendants "All M.D.C. officials and [h]ierarchy." (Doc. 7 at 3).

Plaintiff's Complaint, filed in May 2020, is based largely on MDC's treatment of him and other pretrial detainees at the beginning of the COVID-19 pandemic. (Doc. 7 at 4). Plaintiff alleges that MDC failed to provide him and other detainees with adequate cleaning supplies or masks. (Doc. 7 at 4). Plaintiff, who had an infected finger, had to go to the medical unit every other day where he risked potential exposure to COVID-19 patients. (Doc. 7 at 5). He asked the transport officers responsible for taking him to the medical unit about masks and they advised him that only staff were allowed to wear masks. (Doc. 7 at 8). Plaintiff and other MDC inmates were at risk of contracting and spreading COVID-19. (Doc. 7 at 5).

Plaintiff alleges that he wanted to alert his attorney of these conditions and to pursue legal claims based on them, but MDC officials did not allow him access to the law library, denied him access to certain legal materials, and refused him private calls with his attorney. (Doc. 7 at 3, 7). Nevertheless, Plaintiff alleges that he spoke with other attorneys (whom he describes as the "McClendon lawyers"), and that one of them said she "would talk to the chief to rectify it." (Doc. 7 at 7). He also alleges (and the Court notices) that he and twenty-four other pretrial detainees of MDC filed a *Petition for the Release of Pre-Trial Detainees During (COVID-19)* in April 2020. *See* D.N.M. Case no. 20-cv-317-JCH-KK. The Petition was dismissed for lack of jurisdiction four days after it was filed. *See id.* at Doc. Nos. 2-3. When Plaintiff filed a grievance against the legal

---

[1] In the Complaint, Ms. Morton was identified as "Lisa Morgan." (Doc. 7 at 6). Subsequently, Plaintiff learned that her name is Lisa Morton, and notified the Court of this correction in a supplement to his Complaint. (Doc. 8 at 1).

librarian (apparently for limiting his access to legal materials), she answered the grievance herself. (Doc. 7 at 7).

Based on the foregoing, among other allegations, Plaintiff seeks monetary damages for violations of his constitutional rights. (Doc. 7 at 3, 5). The Court construes Plaintiff's claims as arising under the First and Fourteenth Amendments to the United States Constitution.

II.    Analysis

A.    Standard of Review

As Plaintiff is a prisoner, proceeding pro se in this civil action against a governmental entity, the Amended Complaint must be screened under 28 U.S.C. § 1915A.  Under § 1915A, the Court must dismiss a prisoner civil action *sua sponte* "if the complaint ... is frivolous, malicious, or fails to state a claim on which relief may be granted." 28 U.S.C. § 1915A(b).  The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Plaintiff is *pro se*, his "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  While *pro se* pleadings are judged by the same legal standards as others, the Court can overlook the "failure to cite proper legal authority, . . . confusion of various legal theories, . . . , or . . .  unfamiliarity with pleading requirements."  *Id.*  Moreover, if the initial complaint fails to state a claim, courts should generally grant leave to amend unless amendment would be futile.  *Id.*

B.  Plaintiff's §1983 Claims

Plaintiff's claims arise under 42 U.S.C. § 1983, which provides a vehicle for the vindication of substantive rights guaranteed by the Constitution and laws of the United States.  Section 1983 allows a person whose federal rights have been violated by state or local officials "acting under color of state law" to sue those officials. A §1983 claim is comprised of two essential elements: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *McLaughlin v. Bd. of Trustees of State Colls. of Colo.*, 215 F.3d 1168, 1172 (10th Cir. 2000).

More specifically, a plaintiff must allege that each government official, through the official's own individual actions, has violated his Constitutional rights. *See Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 1998). There must also be a connection between the official conduct and the Constitutional violation. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008); *Trask*, 446 F.3d at 1046. The complaint must clearly identify "exactly *who* is alleged to have done *what* to *whom*" so that each defendant has notice of the basis of the claims against them, particularly. *Robbins v. Okla.*, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis in original).

1.  Claims against MDC

Plaintiff names MDC as a Defendant. A county detention center, such as MDC, cannot be sued under § 1983. *See Dutton v. City of Midwest City*, 630 F. App'x 742, 744 (10th Cir. 2015) (A county detention center "is not a person or legally created entity that can be sued under § 1983"); *White v. Utah*, 5 F. App'x 852, 853 (10th Cir. 2001) (same).  As Plaintiff's claims against MDC are not actionable under § 1983, they must be dismissed.

2.  Official Capacity Claims

Plaintiff seeks to sue Defendants in their official capacities. In the context of § 1983, suing a county official in his or her official capacity is the same as suing the county itself. *Martinez v. Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009). To state a viable § 1983 claim against a local governing body (such as a county), a plaintiff must allege with specificity that conduct undertaken pursuant to an "official policy [or governmental custom] is responsible for a deprivation of rights protected by the constitution." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978); *see Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188 (10th Cir. 2010) ("[A] local governmental entity . . . cannot be held liable for the acts of its employees on a theory of *respondeat superior*. Rather, it will only be held liable for its own acts—acts it has officially sanctioned or ordered."). "A challenged practice may be deemed an official policy or custom for § 1983 . . . purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policy maker, or deliberately indifferent training or supervision." *Schneider v. City of Grand Junction Police Dep't.*, 717 F.3d 760, 770 (10th Cir. 2013). The Court does not discern any allegations that an existing policy or custom is responsible for the alleged deprivations of Plaintiff's constitutional rights. The official capacity claims against Defendants must therefore be dismissed.

3.  <u>Personal Capacity Claims Against the Named Individual Defendants</u>

As to Defendants Hernandez and Richardson, the Complaint does not include allegations specifying their wrongful conduct. While Plaintiff alleges various forms of wrongdoing by M.D.C. officials, by the jail, and by defendants generally, the Court cannot discern whether or how Hernandez and/or Richardson, through their own individual actions, violated Plaintiff's Constitutional rights. *See Ashcroft*, 556 U.S. at 676 (In a § 1983 suit, the plaintiff must "plead that each Government-official defendant, through the official's own individual actions, has violated

5

the Constitution"); *Pahls v. Thomas*, 718 F.3d 1210, 1225-26 (10th Cir. 2013) ("When various officials have taken different actions with respect to a plaintiff," an "undifferentiated contention that 'defendants' infringed on his rights" does not suffice); *Walker v. Mohiuddin*, 947 F.3d 1244, 1249-50 (10th Cir. 2020) (A plaintiff must "do more than show that [his] rights were violated or that defendants, as a collective and undifferentiated whole, were responsible for those violations"). The claims against Hernandez and Richardson must therefore be dismissed. If Plaintiff chooses to file an amended complaint, he should be mindful to allege, as to each named defendant, facts showing "exactly *who* is alleged to have done *what* to" him in violation of his constitutionally protected rights. *Robbins*, 519 F.3d at 1250.

As to Defendant Morton, the Court discerns two forms of wrongful conduct: one arising from Morton answering Plaintiff's grievances against her and the other arising from Morton's alleged interference with Plaintiff's access to the law library and legal materials. Construed liberally, the Complaint alleges that Morton violated due process principles by answering grievances against her as she would obviously be biased in her own favor.  The Tenth Circuit has repeatedly held that "[a] viable due process claim cannot rest on allegations of an unfair or inadequate grievance process." *Burnett v. Allbaugh*, 715 F. App'x 848, 852 (10th Cir. 2017) (collecting cases); *accord Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011) ("[A] prison grievance procedure . . . does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest[.]").  To the extent that Plaintiff seeks relief under § 1983 on this ground, the claim must be dismissed.

As to Morton's alleged interference or deprivation of Plaintiff's access to the law library and to certain legal materials, the Court does not discern a viable § 1983 claim. As a starting point, the Fourteenth Amendment guarantees the right of access the courts, but it does not guarantee the

"right to a law library legal assistance[.]" *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996). In other words, there is no "free-standing right to a law library" such that denying access to one may support a claim for the deprivation of a constitutional right. *Id.* Nevertheless, because "providing access to a law library is an acceptable means of effectuating the right of access to the Courts," an inmate who can prove that "the denial of legal resources hindered [his] efforts to pursue a nonfrivolous claim" may state a viable claim, grounded on a deprivation of the right of access to the courts. *Id.* Here, the facts in the complaint do not show that the alleged deprivation of access to the law library or certain legal materials hindered Plaintiff's efforts to pursue a nonfrivolous legal claim. Moreover, it is apparent from the allegations in the Complaint and from a Court's review of its docket that Plaintiff had access to this Court in the relevant time frame. In addition to the joint petition discussed earlier, Plaintiff filed the present case and a Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241. *See* D.N.M. Case no. 20-cv-480-MV-GJF, seeking release from custody based, in part, on the conditions of confinement in MDC related to the COVID-19 pandemic.[2] Accordingly, to the extent that Plaintiff sought to state a claim based on the constitutionally protected right of access to the courts, the claim is not viable as pled.

4. <u>Deliberate Indifference</u>

The allegations that MDC officials failed to provide masks and cleaning supplies to inmates, thereby leaving them vulnerable to COVID-19, suggest that Plaintiff wishes to pursue a theory that Defendants were deliberately indifferent to a substantial risk of serious harm. Because Plaintiff was a pretrial detainee in the relevant timeframe, a deliberate indifference claim—whether to safety or to medical needs—arises under the Fourteenth Amendment. *Turner v. Okla. Cty. Bd.*

---

[2] *See St. Louis Baptist Temple, Inc., v. Fed. Deposit Ins. Corp.*, 605 F. 2d 1169, 1172 (10th Cir. 1979) (The Court may take notice of "proceedings in other courts, both within and without the federal judicial system, if [they] have a direct relation to matters at issue.").

*of Cty. Commr's*, 804 F. App'x 921, 925 (10th Cir. 2020) ("A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment"; when such a claim arises when an inmate is a "pretrial detainee, the Due Process Clause of the Fourteenth Amendment governs."); *Burke v. Regaldo*, 935 F.3d 960, 991 (10th Cir. 2019) (same as to a deliberate indifference to medical needs claim).

"The deliberate indifference standard has objective and subjective components," both of which must be satisfied to state a viable claim. *Turner*, 804 F. App'x at 925, quoting *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). Specifically, an inmate must allege "(1) that the conditions of his incarceration present an objective substantial risk of serious harm and (2) prison officials acted with deliberate indifference to inmate health and safety by disregarding the risk." *Medina v. Williams*, No. 21-1350, 2022 WL 2714517, at *2 (10th Cir. July 13, 2022) (examining an Eighth Amendment claim arising from conditions of confinement related to COVID-19), citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (providing the standards applicable to a cruel and unusual punishment claim). Here, even assuming that the allegations satisfy the objective component, the Complaint does not show that any of the named Defendants were subjectively aware of, but failed to respond reasonably to, the risk to Plaintiff's health and safety. *See Medina*, 2022 WL 2714517, at *2 ("In addressing the subjective prong, the key inquiry is whether the defendants responded reasonably to the risk posed by COVID-19. . . . A response may be reasonable even if the harm imposed by COVID-19 on inmates ultimately is not averted." (Alterations and citations omitted)).

    5.  <u>Telephone Calls</u>

Plaintiff alleges that MDC denied him telephone calls to his attorney privately, which apparently may have prevented him from telling his attorney about the COVID-19 conditions at

MDC or alerting the attorney to the fact of his court filings.  "[A] prisoner's right to telephone access is subject to rational limitations in the face of legitimate security interests of the penal institution."  *Burnett v. Jones*, 437 F. App'x 736, 745 (10th Cir. 2011). "The exact nature of telephone service to be provided to inmates is generally to be determined by prison administrators, subject to court scrutiny for unreasonable restrictions." *Robinson v. Gunja*, 92 F. App'x 624, 627-28 (10th Cir. 2004).

The contours of Plaintiff's potential claim are difficult to discern as Plaintiff does not allege that he was unable to communicate *at all* with his attorney and that he spoke with *some* attorneys about the issues at MDC. The allegations in the Complaint do not allow the Court to discern whether, and if so how, any alleged restriction on his telephone calls was unreasonable or whether it affected his constitutionally protected rights. As pled, any claim arising from the restricted telephone use must be dismissed.

6.   Mail

Plaintiff alleges that his mail was opened before he received it. It appears that the mail at issue may have been from the Court, though it is not entirely clear. "A prisoner's right to incoming and outgoing mail is protected by the First Amendment." *Hale v. Fed. Bureau of Prisons*, 759 F. App'x, 741, 750 (10th Cir. 2019). But "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). "When every prison places legitimate restrictions on prisoner mail, a First Amendment claim of interference with mail ordinarily is not plausible absent factual allegations showing at least that the alleged interference violated prison rules or that the applicable rule was invalid, either generally or in the specific context of the claim." *Gee v. Pacheco*, 627 F.3d 1178, 1185 (10th Cir. 2010). The vague allegations in the Complaint do

not allow the Court to discern whether this claim is viable. Any such claim must therefore be dismissed.

    Plaintiff May File an Amended Complaint.

    Generally, *pro se* plaintiffs should be given a reasonable opportunity to remedy defects in their pleadings. *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). The opportunity to amend should be granted unless the amendment would be futile. *Hall*, 935 F.2d at 1109. Accordingly, Plaintiff shall be granted a 60-day deadline within which to file an amended complaint. If Plaintiff declines to timely file an amended complaint or files another complaint that fails to state a cognizable claim, the Court may dismiss this action with prejudice and without further notice.

    When drafting an amendment, Plaintiff must "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her...." *VanZandt v. Oklahoma Dep't of Human Servs.*, 276 F. App'x. 843, 847 (10th Cir. 2008) (quotations omitted).  Plaintiff is further advised that § 1983 does not allow claims against supervisors or entities under a theory of respondeat superior liability.  *See Cox v. Glanz*, 800 F.3d 1231, 1248 n.9 (10th Cir. 2015).  A § 1983 plaintiff can only impose liability upon supervisors or entity defendants that promulgate a policy that causes the constitutional deprivation. *Id.* at 1248 (addressing supervisors); *see also Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (applying the rule to entity defendants).

    If he wishes to pursue his deliberate indifference claim, Plaintiff "must establish that defendant(s) knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Kikumura v. Osagie*, 461 F.3d 1269, 1293 (10th Cir. 2006) (quotations omitted).  For example, he should include allegations stating which Defendant(s) knew

that Plaintiff needed a mask-- i.e., because Plaintiff told him or her that he did, but nevertheless refused to provide him one.

If he wishes to pursue his claim regarding telephone calls and mail, Plaintiff must allege facts that, if proven, would demonstrate that specific Defendants restricted his calls and mail in an unreasonable manner that affected his constitutionally protected rights.

IT IS ORDERED that:

(1)     Each of the claims set forth in the Complaint (Doc. 7) are DISMISSED without prejudice; and

(2)     Plaintiff is granted leave to file an amended complaint within 60 days of receipt of this Memorandum Opinion and Order; the failure to do so may result in dismissal of this case without further notice.

_____
HONORABLE MARTHA VÁZQUEZ
SENIOR UNITED STATES DISTRICT JUDGE